Filed 4/16/13  P. v. Chiono CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037816 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS102433) |
| v. | |
| WYONA ANTIONETTE CHIOINO, | |
| Defendant and Appellant. | |

Defendant Wyona Antionette Chioino pleaded no contest to possession of cocaine base for sale.  She negotiated the plea on condition that the trial court place her on felony probation.  The trial court suspended imposition of sentence and placed defendant on probation with conditions.  It later revoked probation and sentenced defendant to an upper term of five years.  On appeal, defendant contends that (1) the trial court abused its discretion in revoking probation and imposing sentence, and (2) she received ineffective assistance of counsel because counsel failed to object to the stated grounds for imposing an upper term.  We affirm the judgment.

FACTUAL BACKGROUND

On October 26, 2010, the Seaside Police Department conducted surveillance at America's Best Value Inn Seaside South Motel (motel), after receiving information regarding drug sales.  The surveillance revealed that defendant and her boyfriend, William Jennings Hill, were selling drugs out of the motel.  A lawful search warrant was obtained and the officers arrested defendant and Hill in their motel room.  Defendant was

in possession of approximately 1.5 grams of cocaine base. On the way to the police department, defendant further confided that she was hiding cocaine rocks inside her brassiere. Defendant was charged with possession of a controlled substance, possession of a controlled substance for sale, and conspiracy to commit a felony.

The officer's summary indicated the following: "That probable cause existed to believe that [defendant] and Hill conspired to sell cocaine base, and possessed cocaine base, for the purpose of sales. The conclusion was based on the following facts: Presence of known drug users coming to [defendant's] and Hill's room, lack of means to show lawful sources of income, lack of paraphernalia, the presence of three cell phones, incriminating statements that were made during questioning, a lack of drug use paraphernalia, a lack of visible signs of drug use."

At the plea hearing on February 2, 2011, the trial court advised defendant that the maximum penalty that could be imposed was five years in prison, followed by three years on parole. Defendant pleaded no contest in exchange for felony probation and was released on a *Cruz*[1] waiver.

At the sentencing hearing on May 11, 2011, the trial court stated the following: "It's not often I see a probation officer so adamant about sending someone to prison. And it's that--that attitude is never going to go away. It's going to stay with this case. So, I'm going to give you conditions of probation and if you violate them you can expect that attitude to be expressed again, and probably by more than one person in this courtroom. . . . [¶] . . . [¶] . . . I put a note here--in fact, I've put it in a couple of different places. And the note basically says that I informed you today that a violation of probation in all likelihood is going to result in a prison commitment." The trial court then suspended imposition of sentence and imposed various terms and conditions of

_____

[1] *People v. Cruz* (1988) 44 Cal.3d 1247 (immediate release in exchange for promise to appear for sentencing; failure to appear risks losing the beneficial plea deal).

2

probation, including that defendant report to probation within three days of her release from custody and also report any change of address or telephone number to probation within 24 hours.

On September 28, 2011, the probation officer filed a petition alleging that defendant had violated probation by failing to report earlier in the month and provide probation with a current address and phone number. At the hearing on October 26, defendant admitted the violations and the trial court revoked probation. In a supplemental report for sentencing, the probation officer recommended that probation be denied and that defendant be sentenced. The probation officer also noted that defendant was presumptively ineligible for probation by virtue of her two prior felony convictions.

On November 30, 2011, at sentencing, the trial court declined to reinstate probation and sentenced defendant to county jail for an upper term of five years. The trial court explained as follows: "So, the first question is whether or not to continue you on probation. I mean, I think the probation officer's insight is stated simply. 'The defendant performed miserably with all agencies. It is felt that the limited resources that are available, that they should be spent on defendants worthy of those resources and not wasted on someone that Probation and the Court has to chase down.' [¶] You've been in the system. You know the system. We don't have the resources to try and deal with you. You're not interested in it. So, probation is terminated. That's the first question to answer. [¶] And then the question about what term. With your record and the sophisticated nature of this offense, it's--it can only be upper term. There are no circumstances in mitigation, none. Your performance on probation, on parole, has been miserable. . . . [¶] The Court does impose the upper term."

## SENTENCING

Probation is a matter of clemency, not of right. (*People v. Covington* (2000) 82 Cal.App.4th 1263, 1267.) Penal Code section 1203.2, subdivision (a), authorizes the trial

court to revoke probation after proper notice and a hearing "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision . . . ." Once a court had determined that a violation of probation has occurred, it must "decide whether under all of the circumstances the violation of probation warrants revocation." (*People v. Avery* (1986) 179 Cal.App.3d 1198, 1204.) The trial court is vested with broad discretion in determining whether to reinstate probation following revocation of probation (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1315), and the trial court's decision to revoke probation is reviewed for an abuse of discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*); *People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*Rodriguez, supra*, at p. 443.)

Here, defendant does not contest the sufficiency of the evidence to support the finding that she violated probation; she admitted the violation. Rather, defendant contends that the trial court abused its discretion when it denied reinstatement of probation. She claims that there was no meaningful exercise of discretion by the trial judge because he had already decided to revoke probation before entertaining argument from counsel. She urges that there is a reasonable probability of a more favorable outcome on a proper exercise of discretion. There is no merit to defendant's contention.

In considering whether to revoke probation, the court's inquiry is broader than the mere circumstances of the violation; it is directed, generally, to the probationer's performance on probation. (*People v. Beaudrie* (1983) 147 Cal.App.3d 686, 691.) "Thus the focus is (1) did the probationer violate the conditions of [her] probation and, if so, (2) what does such an action portend for future conduct?" (*Ibid.*)

4

Defendant had admitted to violating probation, and the trial court considered the probation officers insight before coming to its conclusion. We reiterate that the probation officer's supplemental report stated that defendant had "performed miserably with all agencies." And defendant's criminal record consisted of six convictions since 1987, including three felony convictions. Moreover, the probation officer recommended denial of probation, pointed out that defendant was presumptively ineligible for probation, and opined that defendant's prior performance on probation and parole were "deplorable." In addition, the trial court articulated that it was making a sentencing choice rather than a predetermined fiat by announcing, "[s]o, the first question is whether or not to continue you on probation." It also asked for sentencing recommendations. It opined that defendant had performed miserably on probation. And it concluded that defendant was unsuited for probation: "We don't have the resources to try to deal with you. You're not interested in it. So, probation is terminated."

The trial court's request for counsels' sentencing recommendations and the consideration of defendant's entire record and evidence refutes defendant's assertion that the trial court had predetermined that it would impose a prison sentence.

In short, the trial court's consideration of the record and statements belie defendant's claim that the trial court did not exercise discretion.

INEFFECTIVE ASSISTANCE OF COUNSEL

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) That right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*Ibid.*)

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective

5

standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1058; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.) 'When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel. "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' " (*People v. Samayoa* (1997) 15 Cal.4th 795, 845.)

Defendant bears a burden that is difficult to carry on direct appeal. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) Our review is highly deferential; we must make every effort to avoid the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time. (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.) A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. (*Strickland v. Washington*, *supra*, at p. 689; *People v. Hart* (1999) 20 Cal.4th 546.) The burden is to establish the claim not as a matter of speculation but as a matter of demonstrable reality. (*People v. Garrison* (1966) 246 Cal.App.2d 343, 356.) As to the failure to object in particular, "[a]n attorney may choose not to object for many reasons, and failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.)

Defendant contends that she was deprived of her right to effective assistance of counsel and was prejudiced by her attorney's failure to object to the two principal stated

grounds for imposing the upper term: her criminal record and the sophistication of the crime. We disagree.

"In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, . . . and statements in aggravation or mitigation." (Pen. Code, § 1170, subd. (b).) Here, the probation officer's report listed three aggravating factors: (1) the defendant had served two prior prison terms, (2) the manner in which the crime was carried out indicates planning, sophistication, or professionalism, and (3) the defendant's prior performance on probation and parole were unsatisfactory. The report listed no mitigating factors relating to the crime and one mitigating factor relating to the defendant (defendant voluntarily acknowledged wrongdoing at an early stage of the criminal process).

Defendant argues that the trial court's first stated reason for imposing the upper term, her criminal record, was not directed to any particular point. She adds that her crimes neither involved violence nor increasing seriousness.

But the probation reports and the court file establish defendant's extensive criminal record. Defendant had served two prior prison terms and had six convictions since 1987, three of which were felonies. In light of this background, the trial court could have reasonably cited the defendant's record as a basis for an upper term and trial counsel could have elected not to object to the upper term because objection would have been futile.

Defendant next argues that the trial court's second stated reason for imposing the upper term, that the underlying crime was sophisticated, was not supported by the evidence because it was a "garden-variety" possession-for-sale crime.

7

But the sophistication of the crime was supported by the probation reports and the record. Defendant had profitably sold cocaine to customers from a motel room.[2] Thus, the trial court reasonably decided that the sophistication of the crime warranted an upper term sentence and trial counsel could have elected not to object to the upper term because objection would have been futile.

Furthermore, the probation report described and the trial court articulated a third aggravating factor not challenged by defendant on appeal, i.e., that defendant's history and performance on probation and parole were "unsatisfactory" and "miserable." Thus, trial counsel could have refrained from objecting to the upper term because this third factor was indisputable and sufficient to support an upper term.

Defendant simply fails to demonstrate deficient performance.

<u>DISPOSITION</u>

The judgment is affirmed.

---

[2] The probation report indicated that defendant's motel bill for her three month's stay exceeded $4,000 but that she could not show a lawful source of income.

_____
                                    Premo, J.

WE CONCUR:

_____
        Rushing, P.J.

_____
        Elia, J.

9